IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HENRY NEZ, JR., HAROLD BROWN,
VERNON YAZZIE, and HECTOR
MAYORGA, on behalf of themselves and
others similarly situated,
    *Plaintiffs*,

v.

SOUTHWEST GLASS AND GLAZING,
INC., ANTHONY S. BACA, CAROL J.
MCCARTHY, AND KIRA A. SOWANIC,
    *Defendants*.

NO. 1:15-CV-01041-RJ

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendants Southwest Glass & Glazing, Inc., Anthony S. Baca, Carol J. McCarthy, and Kira A. Sowanick's (collectively, "Defendants") Motion for Summary Judgment. (Doc. 74). Defendants move the Court to enter summary judgment in their favor on all claims asserted against them in Plaintiffs Henry Nez, Jr., Harold Brown, Vernon Yazzie and Hector Mayorga's (collectively, "Plaintiffs") Second Amended Complaint (Doc. 71). After due consideration, Defendants' Motion for Summary Judgment shall be **GRANTED** in part and **DENIED** in part. (Doc. 74).

### I. BACKGROUND

Plaintiffs bring this action both individually and on behalf of all others similarly situated against Defendants asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the New Mexico Minimum Wage Act, N.M.S.A. 1978 § 50-4-19, *et seq.*, the New Mexico Public Works Minimum Wage Act, and state common law. (Doc. 71). Plaintiffs allege Defendants failed to pay them the required prevailing wage rates for all work on public construction projects subject to the Public Works Act. (*Id.*). In addition, Plaintiffs contend that Southwest Glass failed to pay them and other glaziers at the proper rate of overtime for all hours worked over forty per week, giving rise to liability under the FLSA and the Minimum Wage Act. (*Id.*).

On August 23, 2016, the Court granted Plaintiffs' Motion for Conditional Certification under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and conditionally certified the following class: All current and former glaziers who have worked for Southwest Glass and Glazing, Inc. during the three-year period before August 23, 2016. (Doc. 60 at 5). On September 28, 2016, Plaintiffs filed their Second Amended Complaint against Defendants. (Doc. 71).

On September 29, 2016, Defendants filed their Motion for Summary Judgment. (Doc. 74). Defendants contend that the undisputed facts show Plaintiffs were paid the proper prevailing wage rates at all times and that travel time to and from the job sites on which the actual work was performed is not compensable. (*Id.*). On November 4, 2016, Plaintiffs filed their Response to Defendants' Motion for Summary Judgment. (Doc. 85). On November 21, 2016, Defendants filed their Reply in Support of Motion for Summary Judgment. (Doc. 92). This matter is now ready for disposition.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1118 (10th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). An issue "is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way, and a fact is material if under the substantive law it is essential to the proper disposition of the claim." *Varnell v. Dora Consol. School Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014). Thus, "a mere factual dispute need not preclude summary judgment." *Sapone v. Grand Targhee, Inc.*, 308 F.3d 1096, 1100 (10th Cir. 2002). In evaluating the Motion, this Court will "consider all facts and evidence in the light most favorable to the parties opposing summary judgment." *Ron Peterson Firearms, LLC v. Jones*, 760 F.3d 1147, 1154 (10th Cir. 2014).

### III. UNDISPUTED MATERIAL FACTS

Defendants provide and install glass and frames for glass in new, non-residential construction, with a large percentage of their projects classified as public works projects under New Mexico law. (Doc. 74-1 at 25:11–19, 64:6–14). Defendants employ field employees in three job classifications: glaziers, apprentice glaziers, and helpers. (*Id.* at 26:14–20). To be classified as an apprentice glazier, an employee must be registered in an apprenticeship program approved by the New Mexico Department of Workforce Solutions. (*Id.* at 15:5–7; 26:21–23; 79:11–13). Defendants' employees that work on construction projects covered by the Public Works Act are paid wage rates determined by the New Mexico Department of Workforce Solutions for all work performed on the job site. (*Id.* at 22:21–23:9).

Defendants pay employees for the time spent travelling from one job site to another job site within the work day. (*Id.* at 108:22–109:2). Defendants do not require field employees to report to the Albuquerque shop at the beginning of the workweek or to return to the Albuquerque shop at the end of the workweek. (Doc. 74-3 at 56:18–23). Employees may report directly to the job site at the beginning of the week and return home from the job site at the end of the week. (*Id.* at 57:5–21). Many employees go to the Albuquerque shop at the beginning of the workweek to catch a ride in a company vehicle to the job site and then return to the Albuquerque shop at the end of the week in a company vehicle to collect their personal vehicles left at the Albuquerque shop. (Doc. 74-1 at 97:16–98:1; Doc. 74-3 at 31:1–32:7).

On occasion, employees who voluntarily report to the Albuquerque shop at the beginning of the workweek to ride in a company vehicle to the job site will spend time loading a trailer with materials for the job and they are paid for this time. (Doc. 74-1 at 56:5–11; Doc. 74-3 at 58:14–23). Defendants pay all field employees at the rate of $10.00 per hour for the average time it would take to travel from the Albuquerque shop at the beginning of the week to the job site and returning from the job site to the Albuquerque shop at the end of the week. (Doc. 74-3 at 48:13–19, 49:13–50:4).

3

Employees are paid this amount regardless of whether they drive or ride and regardless of whether they come to the Albuquerque shop to ride in a company vehicle or travel from their homes directly to the job site without going to the Albuquerque shop. (Doc. 74-5 at ¶ 11).

### A. Plaintiff Henry Nez, Jr.

Plaintiff Henry Nez, Jr. ("Nez") has been employed by Defendants since June 2008 and currently works in the field as a glazier on construction projects. (Doc. 74-7 at 3:9–18, 4:12–16, 5:24–6:6). Nez did not generally report to the Albuquerque shop; rather, Nez reported directly to the job site unless his route took him through Albuquerque. (*Id.* at 19:18–24, 55:25–56:9). Nez was required to report to the job site on Monday morning and would return home at the end of the workday on Thursday if he did not ride in a company vehicle from the Albuquerque shop. (*Id.* at 24:5–22, 26:1–9). Nez was paid at the designated glazier wage rate for all of his work on the job site. (*Id.* at 31:13–16). Nez received subsistence for any out-of-town and private projects he worked on, which included a weekly per diem to cover food and lodging expenses, as well as a $10 per hour imbursement for the calculated average amount of drive time from the Albuquerque shop to the out-of-town job site and back to the shop even if he did not return to the shop. (*Id.* at 22:22–23:14, 47:6–48:10).

### B. Plaintiff Harold Brown

Plaintiff Harold D. Brown ("Brown") was hired by Defendants in March 2011 and is currently employed as a Helper working in the field of construction projects. (Doc. 74-6). While Brown was not required to report to Defendants' Albuquerque shop before or after working at an out-of-town job site, if Albuquerque was closer to Brown's residence than the job site he would go to the shop to ride in a company vehicle rather than taking his personal vehicle. (Doc. 74-8 at 32:25–40:19). Brown was paid at the designated laborer wage rate for all of his work on the job site unless he erected frames or set glass, in which case he was paid the glazier rate for his time spent on those activities. (Doc. 74-5 at ¶¶ 5, 7). Brown received subsistence for any public works projects he

4

worked on, which included a weekly per diem to cover good and lodging expenses, as well as a $10 per hour imbursement for the calculated average amount of drive time from the Albuquerque Shop to the out-of-town job site and back to the shop. (Doc. 74-8 at 48:5–49:14).

C.   **Plaintiff Vernon Yazzie**

Plaintiff Vernon Yazzie ("Yazzie") was employed by Defendants as a Helper working in the filed on construction projects from approximately March 2000 to December 2015. (Doc. 74-6). Yazzie was not required to report to Defendants' Albuquerque shop but his choice whether he reported to the Albuquerque shop to ride in a company vehicle rather than driving his own personal vehicle to a job site was a choice Yazzie made on a job-by-job basis. (Doc. 74-9 at 8:5–16, 27:13–28:4). Yazzie was paid at the designated laborer wage rate for all of his work on the job site unless he erected frames or set glass, in which case he would receive the glazier rate. (Doc. 74-1 at 125:17–126:3). Yazzie received subsistence for any public works projects he worked on, which included a weekly per diem to cover food and lodging expenses, as well as a $10 per hour imbursement for the calculated average amount of drive time from the Albuquerque shop to the out-of-town job site and back to the shop. (Doc. 74-9 at 28:5–21).

D.   **Plaintiff Hector Mayorga**

Plaintiff Hector Mayorga ("Mayorga") was employed by Defendants as an Apprentice working in the field on construction projects from approximately July 2010 to February 2016. (Doc. 74-10 at 4:14–21, 6:3–4). Mayorga was a resident of Albuquerque and regularly reported to Defendants' Albuquerque shop at the beginning of the workweek to ride in a company vehicle with other employees to an out-of-town job site and then return to Albuquerque after completion of the workweek. (*Id.* at 20:23–25, 22:6–21, 23:6–15). Mayorga was paid at the designated apprentice wage rate for all of his work on the job site. (*Id.* at 20:6–21). Mayorga received subsistence for any public works projects he worked on, which included a weekly per diem to cover food and lodging

expenses, as well as a $10 per hour imbursement for the calculated average amount of drive time from the Albuquerque shop to the out-of-town job site and back to the shop. (*Id.* at 23:16–24:1).

## IV.   DISCUSSION

A.   **Compensability of Commuting Time Under the FLSA and Minimum Wage Act**

Plaintiffs allege a claim under the FLSA and Minimum Wage Act for time spent traveling to and from the out-of-town job sites at which they worked. (Doc. 74 at 11–12). Defendants argue Plaintiffs' purported claim for travel time fails on the merits. (*Id.* at 12). The Court finds that the deposition testimony does not dispute the following facts material to this question: field employees were not required to report to the Albuquerque shop before proceeding to the job site where they would perform their work; Defendants' employees had the option of going to the Albuquerque shop at the beginning of the workweek to catch a ride to the out-of-town job site; employees were free to return directly home at the end of the workweek without stopping at the Albuquerque shop. (Doc. 74-7 at 19:18–24, 55:25–56:9; Doc. 74-8 at 32:25–40:19; Doc. 74-9 at 8:5–16, 27:13–28:4; Doc. 74-10 at 20:23–25, 22:6–21, 23:6–15). The only remaining issue is what the law demands on these undisputed facts.

First, the law forecloses relief under the FLSA. Congress enacted the Portal–to–Portal Act of 1947, 29 U.S.C. §§ 251–262, to define certain activities that employers need not compensate pursuant to the FLSA. Specifically, Portal–to–Portal Act provides that the following activities are not compensable:

1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

Under Department of Labor regulations explaining the Portal–to–Portal Act, *see* 29 C.F.R. § 790.6 (1947), the workday begins with the "first principal activity" and ends with the last. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005). The Supreme Court clarified what constitutes a "principal activity" in *IBP, Inc. v. Alvarez*, 546 U.S. at 34. It held that anything that is "integral and indispensable" to a "principal activity" is itself a "principal activity" under the Portal–to–Portal Act, which makes it compensable. 546 U.S. at 37. Travel from a pickup point to the place where work is to be performed is not compensable time. *Vega v. Gasper*, 36 F.3d 417, 424–25 (5th Cir. 1994) (holding travel time from pickup point to work site up to two hours away was not compensable).

The United States Court of Appeals for the Tenth Circuit has interpreted what constitutes preliminary, non-compensable activities. In *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274 (10th Cir. 2006), the plaintiffs argued that they were entitled to compensation for time spent loading their trucks with safety and protective gear, then traveling to the job site. *See* 462 F.3d at 1276–77. The Tenth Circuit held that, where:

> an employee's activity "takes all of a few seconds and requires little or no concentration," then the activity is "properly considered not work at all." Moreover, "[r]equiring employees to show up at their work stations with such standard equipment [as a hard hat, safety glasses, earplugs, and safety shoes] is . . . simply a prerequisite for the job, and is purely preliminary in nature. Consequently, the plaintiffs' travel to and from the well sites was not integral and indispensable to their principal activities merely because they were required to carry their personal safety equipment along with them.

*Id.* at 1289 (internal citations omitted).

In this case, the fact that Plaintiffs had the option of reporting to the Albuquerque shop at the beginning of the workweek to drive together to job sites in a company vehicle does not require payment of travel time because the travel time is not integral and indispensable to their principal duties. *Smith*, 462 F.3d at 1288. Plaintiffs were not required to report to the Albuquerque shop and had the option of driving directly to the job site. (Doc. 74-1 at 57:5–21). In addition, Plaintiffs have presented no evidence that employees received vital instructions at the Albuquerque shop before

traveling to the work site, nor is there any evidence that they regularly picked up or dropped off essential equipment or paperwork while traveling.

To the contrary, the summary judgment evidence shows that Plaintiffs were not required to transport critical tools required for their work from the Albuquerque shop because materials for use on a job site were delivered by a special truck driven by a shop employee, vendors or suppliers. (*Id.* at 98:10-21). Ordinarily, time spent commuting to work is not compensable, "even if the employee is also transporting equipment for the employer's benefit." *Garcia v. Crossmark, Inc.*, 157 F. Supp. 3d 1046, 1050 (D.N.M. 2015) (quoting *Dooley v. Libert Mut. Ins. Co.*, 307 F. Supp. 2d 234, 246 (D. Mass. 2004)). While employees may occasionally transport materials from the Albuquerque shop to the job site, this practice was not sufficiently regular to constitute a regular course of business. *Smith*, 462 F.3d at 1289. Moreover, there is no evidence to dispute that Plaintiffs were compensated for time spent loading any trailer at the Albuquerque shop. (Doc. 74-1 at 56:5-11; Doc. 74-3 at 58:14-23). Rather, the question is whether time spent in transit is compensable. The fact that Plaintiffs received compensation for occasional loading of materials at the Albuquerque shop does not transform their drive to the job site into working time. *Garcia*, 157 F. Supp. 3d at 1050. Thus, the Court finds that, based on the uncontested facts, Plaintiffs' commute to the job site does not constitute working time and summary judgment on this issue will be granted in favor of Defendants.

In addition, the fact that employees who reported to the Albuquerque shop to get a ride to the job site used company vehicles is irrelevant. *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1120-21 (10th Cir. 1999). The record reflects Defendants paid field employees at the rate of $10.00 per hour for travel time from the Albuquerque shop to the job site at the beginning of the week and from the job site back to the Albuquerque shop at the end of the week, plus per diem payments for food and lodging. (Doc. 74-3 at 48:13-19, 49:13-50:4). Employees were paid this amount for travel time even if they did not report to the Albuquerque shop and instead drove from their homes directly to the job site at the beginning of the workweek or from the job site

to their homes at the end of the workweek. (Doc. 74-5 at ¶ 11). Defendants made these payments not out of any legal obligation but for employee relations purposes and to remain competitive in the market. (Doc. 74 at 16). Thus, the fact that Defendants paid employees for time spent traveling to and from job sites does not provide any basis to infer a legal obligation to pay for that time pursuant to the FLSA. Accordingly, Plaintiffs' travel time is not compensable under the FLSA.

Finally, the travel time at issue is also not compensable pursuant to the Minimum Wage Act. *Segura v. J.W. Drilling, Inc.*, 355 P.3d 845, 848–49 (N.M. 2015) (rejecting contention that travel time to and from remote locations beyond a "normal" commute is compensable since the Minimum Wage Act is silent on travel time, whether within a "normal commute" or otherwise). Generally, commuting time to and from a job site is not compensable under the Minimum Wage Act absent an agreement to the contrary. *Id.* at 849. Since the Minimum Wage Act does not expressly require compensation for travel time to and from the job site, the general rule that commuting time is not compensable applies. Because Plaintiffs' travel time is not compensable under the Minimum Wage Act or the FLSA, Defendants' Motion for Summary Judgment on Plaintiffs' travel time claims shall be **GRANTED**. (Doc. 74).

**B.     Plaintiffs' Claims for Violation of the Public Works Act and for Unjust Enrichment**

Plaintiffs claim that Defendants have failed to comply with the terms of the Public Works Act. (Doc. 71 at ¶ 21). Plaintiffs allege that they "and others similarly situated were not paid the hourly wages required by the wage determinations on those public works projects, nor were they provided with overtime on public works projects at one and one-half times the prevailing rate." (*Id.*). Plaintiffs claim that their work included glazier duties, and therefore, they should have been paid at the higher glazier wage rate rather than the prevailing laborer rate for some or all of their work time on projects. (Doc. 85 at 4).

The Public Works Act, NMSA 1989 §§ 13-4-10–13-4-17, requires contractors and subcontractors with contractors for covered public construction projects to:

> pay all mechanics and laborers employed on the site of the project, unconditionally and not less often than once a week and without subsequent unlawful deduction or rebate on any account, the full amounts accrued at time of payment computed at wage rates and fringe benefit rates not less than those determined pursuant to Subsection B of this section to be the prevailing wage rates and prevailing fringe benefit rates issued for the project.

NMSA 1989 § 13-4-11(A). The Department of Workforce Solutions' Public Works Act regulations contain job classification and descriptions, including a description of the work of a glazier:

> Installs metal window and door frames without glass when not welded to frame structures. Installs glass, including plate and window glass, mirrors, beveled plate, rough, ribbed, wire, figured, colored, art and other type glass when set in sash, frames, doors, skylights, etc., when set with putty, molding or other methods which are common to the glazing trade.

11.1.2.18(Q) NMAC.

Based on the level of experience of the employee, Defendants characterized their field employees as either glaziers, apprentice glaziers (who were required to be enrolled in an approved apprenticeship program), or helpers. (Doc. 74-1 at 26:14–20). Employees designated as glazers were paid the prevailing glazier wage rate for all hours of work on a public construction project. (*Id.* at 22:21–23:9). Apprentice glaziers were paid a percentage of the prevailing glazier rate for all hours of work on the job site. (*Id.*). Helpers were paid at the Laborer Group III semi-skilled prevailing wage rate for all hours of work on the job site unless they were performing glazier duties, in which case they were paid at the prevailing glazier rate. (*Id.*).

With regard to Plaintiffs' claims for violations of the Public Works Act and for unjust enrichment relating to employees designated as apprentice glaziers or helpers, the Court finds that material issues of fact remain as to how much time these employees actually performed glazier job duties and whether these employees were misclassified as apprentice glaziers or helpers. As such, Defendants' Motion for Summary Judgment on Plaintiffs' claims for violations of the Public Works Act and for unjust enrichment shall be **DENIED** in part as those claims relate to employees classified as apprentice glaziers or helpers. (Doc. 74).

Because Defendants pay their glaziers the prevailing glazier wage rate for all work on the job site, including time spent in set up and material distribution, the undisputed summary judgment evidence shows that Defendants did not violate the Public Works Act with regard to payment of employees in the glazier job classification. For example, Plaintiff Nez works in the field as a glazier on construction projects. (Doc. 74-7 at 3:9–18, 4:12–16, 5:24–6:6). Nez was paid at the designated glazier wage rate for all of his work on the job site. (*Id.* at 31:13–16). As there has been no underpayment of Plaintiff Nez or any employees designated as glaziers under the Public Works Act, there is no basis for an unjust enrichment claim against Defendants relating to the payment of these Plaintiffs. Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' claims for violations of the Public Works Act and for unjust enrichment shall be **GRANTED** in part as those claims relate to employees classified as glaziers. (Doc. 74).

### V.   CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment shall be **GRANTED** in part and **DENIED** in part. (Doc. 74). Plaintiffs' claims for travel time relating to their commute to and from job sites under the FLSA and the Minimum Wage Act shall be **DISMISSED WITH PREJUDICE**. In addition, Plaintiffs' claims for violations of the Public Works Act and for unjust enrichment relating to employees classified as glaziers shall be **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

SIGNED this 8th day of December 2016.

ROBERT A. JUNELL
Senior United States District Judge